KATHERINE WARNER DOERR AND OTHERS v.
HAROLD L. WARNER AND ANOTHER.
KATHERINE M. DOERR AND OTHERS,
INTERVENORS.
KATHERINE B. WARNER, INTERVENOR.

76 N. W. (2d) 505.

April 6, 1956—No. 36,770.

*R. H. Fryberger* and *M. R. Keith,* for appellants.
*Covell & Bachelder,* for respondents.

MATSON, JUSTICE.

Appeal from two orders of the district court, namely, (1) an order granting a temporary injunction enjoining defendants from further prosecuting certain proceedings in the Washoe County District Court of the State of Nevada; and (2) an order denying defendants' motion to dismiss this action for lack of jurisdiction in the Hennepin County District Court.

This action was first commenced on June 6, 1951, in the Hennepin County District Court to confirm a trust; for an accounting by the trustees; and for the removal of the sole remaining trustee and appointment of a successor trustee.

On December 7, 1929, defendant Harold L. Warner and Katherine B. Warner, one of the intervenors, were husband and wife. Harold then made a gift of certain property to Katherine who, as trust settlor, at once placed the property in trust, with Harold and herself designated as the beneficiaries of the trust income for life and their five children named as remaindermen. As the trust was originally established, Harold and the Warner Holding Company, a South Dakota corporation, were named as trustees. The action herein was commenced by the children, the aforesaid remaindermen, against the two trustees.

We are concerned with only two amendments to the original 1929 trust instrument, namely, the March 8, 1944, amendment, which

made Harold the sole trustee, and the February 20, 1948, amendment, whereby the status of the children was changed from that of remaindermen to successor beneficiaries of the trust income after and upon the death of both Harold and Katherine, and whereby the grandchildren were made the remaindermen entitled to the corpus upon the termination of the trust.

Sometime in 1949 Harold and Katherine moved from Minnesota and established residence in Reno, Nevada. As already noted, this action was first commenced by the children on June 6, 1951, in the Hennepin County District Court. Personal service was obtained on defendant Harold when the action was commenced. Upon his demand, the action was removed to the United States District Court on June 21, 1951, on the ground of diversity of citizenship. In the fall of 1951, after the action had been commenced, defendant Harold, as trustee, moved the res of the trust, consisting primarily of stocks and bonds of Minnesota corporations, to Nevada where it has remained with the exception of a period of time during which it was brought back to Minnesota by court order for examination by the plaintiffs.

On January 18, 1954, in an ex parte proceeding, pursuant to the petition of defendant Harold, the Washoe County District Court of Nevada issued several orders which purported to take jurisdiction of the trust, confirm the appointment of defendant Harold as trustee, qualify him as such, and fix his bond. This proceeding was held pursuant to the statutes of Nevada which were enacted by the Nevada Legislature in 1953 (Nevada L. 1953, c. 22) in substantially the same provisions as those of the corresponding Minnesota statutes (M. S. A. 501.33, 501.34, 501.35, 501.38).

Pursuant to stipulation the grandchildren, who became the remaindermen under the February 20, 1949, amendment, were made intervenors on August 23, 1954, while the action was pending in the United States District Court in Minnesota. A short time later, by order of the court, Katherine was also made an intervenor. On October 8, 1954, the United States District Court remanded the case to the state court for the reason that the requisite diversity of

citizenship for jurisdiction was extinguished when Katherine was permitted to intervene since she, in addition to the defendant Harold, was a resident of Nevada at the time the action was commenced.

On July 28, 1955, the state district court issued its orders from which this appeal is taken confirming and adopting the proceedings and pleadings had in the United States District Court; denying defendants' motion for dismissal on the ground of lack of jurisdiction; and finally enjoining the defendants from further proceeding in the Nevada court.

We are concerned with the following issues: (1) Is the actual joinder of *all* indispensable parties to an action a prerequisite to the acquirement of jurisdiction over the subject matter of the action? (2) Assuming the state trial court acquired jurisdiction on June 6, 1951, without a joinder of all indispensable parties, was the state court completely divested of that jurisdiction June 21, 1951, when the action was removed to the Federal court so that the state court retained no vestige of jurisdiction between such date and October 8, 1954, when the Federal court remanded the action to the state court? (3) In a pending action to confirm a trust, for an accounting, and for the removal of the trustee, which action was commenced by obtaining jurisdiction by personal service within the state upon a trustee who is a nonresident, may the court in the exercise of its equitable jurisdiction properly enjoin, until final judgment, such nonresident trustee from prosecuting in another state other suits which raise the same issues?

■ We turn to the first issue of whether the joinder of all indispensable parties is a prerequisite to the acquirement of jurisdiction by the state court. Assuming jurisdiction was not lost by the removal of the action to the Federal court, defendants apparently concede, as they must, that, if Katherine and the grandchildren had been made parties to the action in the Minnesota district court before proceedings were commenced in the Nevada court, the Minnesota court would have jurisdiction of this action. Defendants contend, however, that Katherine and the grandchildren were indispensable parties whose joinder as parties was a prerequisite to the acquire-

ment by the state court of jurisdiction over the action, and that they did not become parties in the state court until July 28, 1955, when that court adopted the proceedings had in the United States District Court. It follows therefore, defendants assert, that since the Nevada action was commenced prior to July 28, 1955, the Nevada court has prior jurisdiction over the trust to the exclusion of an acquirement and exercise of jurisdiction over the trust by the Minnesota district court. Hence, defendants urge, the action in the district court must be dismissed for lack of jurisdiction.

The trust res was located in Minnesota and the individual trustee-defendant, though a nonresident, was personally present in this jurisdiction when personal service was made upon him. As a general rule a civil action is commenced, and the court thereby acquires jurisdiction, when personal service upon the defendant is actually made as prescribed by statute or rule.[1] Although an indispensable party to an action must be joined, and for the failure to join him the action must be dismissed since the adjudication cannot proceed to judgment without him,[2] such defect is not jurisdictional. Unfortunately in cases where there is error in the nonjoinder of necessary or indispensable parties courts have fallen into a common error by designating the defect as jurisdictional. State of Washington v. United States (9 Cir.) 87 F. (2d) 421. Long ago it was recognized that when a court, because of the nonjoinder of an indispensable party, cannot make a final decree which is consistent with equity and good conscience, the court, in the exercise of a sound discretion, may retain jurisdiction until the rights and obligations relating to the absent indispensable party may be litigated in that or in some other court. See, Mallow v. Hinde, 25 U. S. (12 Wheat.) 193, 198, 6 L. ed. 599, 600. It is well established that, although a court may

---

[1]Rules of Civil Procedure, Rule 3.01; Minnesota Rules of Civil Procedure, Tentative Draft, p. 2; Bond v. Pennsylvania R. Co. 124 Minn. 195, 144 N. W. 942; Goodman v. Ancient Order of United Workmen, 211 Minn. 181, 300 N. W. 624.

[2]Rules of Civil Procedure, Rule 19; McAndrews v. Krause, 245 Minn. 85, 71 N. W. (2d) 153; 1 Youngquist & Blacik, Minnesota Rules Practice, pp. 568, 569, 582.

not proceed to judgment in a case in which an indispensable party is absent, the reason therefor is not that the court does not have jurisdiction but for the broader reason that in the exercise of due process no court, regardless of its jurisdictional structure, may adjudicate directly upon a person's rights without such person being either actually or constructively before the court.[3]

That the nonjoinder of an indispensable party is not a jurisdictional defect is further illustrated by the line of cases which hold that, where a similar interest or privity of estate exists between an intervenor and other plaintiffs, a suit commenced before the statute of limitations has run inures to the benefit of an intervenor who intervenes after the statute would normally have barred his action. The intervention relates back to the time that the action was brought by the original parties.[4] This is true even though the filing of a petition of intervention is generally regarded as the commencement of a new cause of action.[5]

Furthermore, the Minnesota rules of civil procedure (and the corresponding Federal rules) recognize a distinction between a jurisdictional defect and the defect arising from nonjoinder of an indispensable party. Rule 12.02 designates lack of jurisdiction over the subject matter and failure to join an indispensable party as separate defenses. Rule 12.08, pertaining to waiver of defenses, makes the same distinction. If the failure to join an indispensable party is jurisdictional, it would not have been listed separately since it could have been presented under the defense of lack of jurisdiction. The fact that the rules make this distinction indicates a controlling intent that the failure to join an indispensable party does

---

[3]State of Washington v. United States (9 Cir.) 87 F. (2d) 421; Shields v. Barrow, 58 U. S. (17 How.) 130, 15 L. ed. 158; Mallow v. Hinde, 25 U. S. (12 Wheat.) 193, 6 L. ed. 599.

[4]York v. Guaranty Trust Co. of New York (2 Cir.) 143 F. (2d) 503, 7 Fed. Rules Serv. 23a.33, Case 1; Kam Koon Wan v. E. E. Black, Ltd. (D. Hawaii) 75 F. Supp. 553; Marsh v. United States (4 Cir.) 97 F. (2d) 327; 34 Am. Jur., Limitation of Actions, § 278; 3 Moore, Federal Practice (2 ed.) par. 23.12, p. 3476.

[5]Wright v. United States Rubber Co. (S. D. Iowa) 69 F. Supp. 621, 10 Fed. Rules Serv. 23a.33, Case 2.

not deprive the court of jurisdiction of the action. Rule 21 indicates that a lack of parties is not jurisdictional since it provides that parties (including an indispensable party) may be dropped or added by motion or on the court's own initiative at any stage of the action. 3 Moore, Federal Practice (2 ed.) par. 21.04, p. 2906. Under this rule an erring party may add the indispensable party and prevent a dismissal.[6] In fact, the better practice is to have the court join the indispensable party rather than dismiss the action.[7] The fact that the court has power to add indispensable parties during the course of the action illustrates that it has jurisdiction of the action from its beginning. Significantly Rule 21, besides authorizing the addition of indispensable parties, permits any claim against a party to be severed and proceeded with separately.[8] It is entirely conceivable that, where an action involves two claims, and if the disposition of one of them requires the joinder of an indispensable party who is beyond the territorial jurisdiction of the court, Rule 21 might be employed to sever the claims so that the court could proceed to judgment as to the claim not requiring the indispensable party. This further illustrates the proposition that the court has jurisdiction of the subject matter of the action even though not all indispensable parties are present.

■ We can only conclude that the joinder of all indispensable parties is not a prerequisite to the acquirement of jurisdiction by the court over the subject matter of an action and that the court acquires such jurisdiction the moment the action is commenced despite the fact that an indispensable party has been omitted.

■ We turn to the effect upon the jurisdiction of a state court of an order removing an action to the Federal court and of its subse-

---

[6]Minnesota Rules of Civil Procedure, Tentative Draft, p. 96.

[7]See, Franz v. Buder (8 Cir.) 11 F. (2d) 854; Sneed v. Phillips Petroleum Co. (5 Cir.) 76 F. (2d) 785.

[8]See, Triangle Conduit & Cable Co. Inc. v. National Elec. Products Corp. (3 Cir.) 138 F. (2d) 46, certiorari denied, 320 U. S. 784, 64 S. Ct. 191, 88 L. ed. 471; Triangle Conduit & Cable Co. Inc. v. National Elec. Products Corp. (3 Cir.) 125 F. (2d) 1008, certiorari denied, 316 U. S. 676, 62 S. Ct. 1046, 86 L. ed. 1750; 6 Cyclopedia of Federal Procedure (3 ed.) § 21.132.

quent remand to the state court. An order remanding an action to the Federal court does not absolutely divest the state court of its jurisdiction but merely suspends or holds that jurisdiction in abeyance either until the action is terminated in the Federal court or until the latter court remands the action to the state court; and in the event of a remand, the state court's continuous, though dormant, jurisdiction is revived and such court then proceeds to a final determination of the action in the exercise of its continuing original jurisdiction which was acquired when the action was originally commenced. It is well settled that jurisdiction once acquired by a state court is continuous though the case has been removed to the United States District Court and later remanded to the state court. The basic correctness of this rule becomes at once apparent if it is borne in mind that the order removing an action to a Federal court does not terminate the state court's jurisdiction *but merely stays or interrupts proceedings in that court* pending a disposal of the action by the Federal court. The effect of an order remanding is not to invest the state court with a new jurisdiction but merely to revive a jurisdiction previously acquired but held in abeyance. These principles are so thoroughly settled that a lengthy discussion of them is unnecessary.[9] We therefore hold that the jurisdiction acquired by the Minnesota district court on June 6, 1951, when the summons and complaint were served upon defendant Harold L. Warner, is a continuous jurisdiction which has never been terminated, though the exercise of it has been temporarily stayed or interrupted, and that the orders of said court entered after the remand were made in the exercise of that continuous jurisdiction.

■ The answer to the remaining question relating to the power of the trial court to issue an injunction involves a consideration of (1) the proper territorial forum for the administration of the trust,

---

[9]Southern Pac. R. Co. v. Superior Court, 63 Cal. 607; Leslie v. Floyd Gas Co. (E. D. Ky.) 11 F. Supp 401; Germania F. Ins. Co. v. Francis, 52 Miss. 457, 24 Am. R. 674; Reeve Brothers v. Allen, 67 Ga. App. 514, 21 S. E. (2d) 244; Knahtla v. Oregon S. L. Ry. Co. 21 Ore. 136, 27 P. 91; Birdseye v. Shaeffer (W. D. Tex.) 37 F. 821; 2 Cyclopedia of Federal Procedure (3 ed.) § 3.155; Baltimore & Ohio R. Co. v. Koontz, 104 U. S. 5, 26 L. ed. 643.

(2) the ground justifying injunctive relief, and (3) whether an injunction will here lie against a nonresident trustee.

Clearly, the proper forum for the administration of the trust and the adjudication of the rights and liabilities of the parties interested as trustees, settlors, or beneficiaries is the District Court of Hennepin County in this state. Among the factors deemed controlling by the courts in determining the proper territorial forum for the administration of a trust are these: (1) The provisions of the trust instrument; (2) the residences of the beneficiaries, the settlor, and the trustee; (3) the location of the trust res; (4) the place of the trust business; and (5) the personal jurisdiction acquired over the parties interested in the trust through personal service.[10] In the light of these factors the trust ought to be administered in Minnesota. First of all is the factor that the trust instrument as amended specifically provides that "the District Court of the County of Hennepin, State of Minnesota" should appoint a successor trustee under certain circumstances, and also that the laws of Minnesota shall guide the trustee in accumulating and later in distributing trust income. Secondly, we have the residential factor. While it appears that the defendant trustee Harold Warner resides in Nevada and that Katherine resided in Nevada at the time the action was commenced, the latter, who is the settlor of the trust, is again a permanent resident of Hennepin County in this state. Except insofar as the trustee is also a beneficiary, all the beneficiaries are residents of Minnesota. Another significant factor is that the trust res was located in Minnesota when the action was commenced and the state court acquired jurisdiction. It also appears that personal jurisdiction over all the parties interested in the trust, *including the individual defendant trustee,* was acquired by personal service in this state. Finally, the natural and logical place for the conduct of the trust business is Minnesota since at least two corporations which are substantially owned and controlled by the trust are

[10]For general summaries of these principles, see 54 Am. Jur., Trusts, § 275; Annotation, 15 A. L. R. (2d) 610, 618; Restatement, Conflict of Laws, § 297, *comment d.*

Minnesota corporations which in turn possess large holdings of Minnesota real estate.

■ We turn to the ground for injunctive relief. When a court of equity assumes jurisdiction of a controversy, it has jurisdiction to determine all relevant issues, and in the exercise of that power it may restrain the prosecution of other suits which raise the same issues until a final judgment has been rendered.[11] It is well settled that the court first obtaining jurisdiction of the subject matter and of the parties may properly restrain one of the parties from proceeding in another state.[12] It is clear that at least some of the issues raised in the Nevada proceedings were identical to those to be tried in the instant action. For example, issues pertaining to the confirmation or discharge of the trustee were involved. Upon this basis there was a proper ground for injunctive relief.

■ Although it has been held by some jurisdictions that a court cannot enjoin a nonresident party to a pending action from maintaining an action in another state,[13] other jurisdictions, presenting the sounder view in our opinion, have recognized that injunctions restraining a party from maintaining such actions may be proper even though the party to be restrained is a nonresident.[14] In the recent and well-reasoned opinion in Wehrhane v. Peyton, 134 Conn. 486, 58 A. (2d) 698, 6 A. L. R. (2d) 887, the court concluded that the true reason for denying an injunction against a nonresident is not that the court has no jurisdiction but that if the injunction

[11]Joyce, Injunctions, § 544a; Gage v. Riverside Trust Co. (S. D. Cal.) 86 F. 984.

[12]Old Dominion Copper Min. & Smelting Co. v. Bigelow, 203 Mass. 159, 221, 89 N. E. 193, 220, 40 L.R.A.(N.S.) 314, 348, affirmed, 225 U. S. 111, 32 S. Ct. 641, 56 L. ed. 1009, Ann. Cas. 1913E, 875; see, Annotation, 6 A. L. R. (2d) 902; 28 Am. Jur., Injunctions, § 215.

[13]Greer v. Cook, 88 Ark. 93, 113 S. W. 1009, 16 Ann. Cas. 671; Carpenter v. Hanes, 162 N. C. 46, 77 S. E. 1101, Ann. Cas. 1915A, 832; 28 Am. Jur., Injunctions, § 208.

[14]Wehrhane v. Peyton, 134 Conn. 486, 58 A. (2d) 698, 6 A. L. R. (2d) 887; Chafee v. Quidnick Co. 13 R. I. 442; Receivers Middlesex Banking Co. v. Realty Inv. Co. 104 Conn. 206, 132 A. 390; see, Annotation, 6 A. L. R. (2d) 896, 902.

were granted it could not ordinarily be enforced. The Connecticut court was of the opinion that, although a nonresident probably could not be punished by citing him into court and imposing a penalty upon him personally, he, nevertheless, could be denied the aid of the courts of that state until he had purged himself of contempt. In that case the nonresident required the aid of the probate court of Connecticut since it controlled the distribution of any monies to which the nonresident might be entitled pursuant to any foreign judgment. The court pointed out that, if the nonresident secured a judgment in violation of the injunction, the Connecticut probate court might well refuse to permit him to assert and protect his rights in that forum.

■ Even more so than in the Wehrhane case, the individual defendant herein, as a nonresident trustee, is dependent upon the aid of the Minnesota court. The major source of trust income is located in this state. If he fails to abide the injunction and to cooperate with the court in the administration of the trust, the court may remove him as trustee and appoint another. Upon appointment the successor trustee naturally becomes the owner of the entire trust res for the benefit of the beneficiaries, and, as a corollary thereto, the former trustee who has been removed ceases to have any right of ownership or control. Where an action has been commenced for the confirmation of a trust—as well as for an accounting and other relief—whereby the court has acquired a jurisdiction in personam over the trustee and a quasi in rem jurisdiction over the trust res then located within the state, and when the orderly and uninterrupted exercise of that jurisdiction pursuant to a controlling statute (M. S. A. 501.33) will give the court a full in rem jurisdiction over the trust, and while the action is pending the trustee in a calculated and systematic manner seeks to deprive the court of its jurisdiction by removing the trust res to another state, it becomes the duty of the court, in the interest of the orderly administration of justice, to protect its jurisdiction by enjoining such nonresident trustee from prosecuting a similar action in another state insofar as, in the exercise of a sound discretion, the court can directly enforce its

commands by imposing a penalty upon such nonresident or can indirectly enforce obedience by denying him judicial aid necessary for the enjoyment and protection of his rights in its forum. Since the Minnesota court first acquired jurisdiction, and at a time when the trust res was located in this state, it follows as a matter of well-recognized comity that such jurisdiction takes precedence and is a bar to the acquirement of a conflicting jurisdiction in another state. Comity has been given increasing recognition whereby the states yield to each other in matters of jurisdiction in order to reduce to a minimum those areas of irreconcilable conflict which delay and tend to defeat the orderly administration of justice. Under the circumstances we cannot say that the trial court abused its discretion in the issuance of the injunction.

The orders of the trial court are affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.