*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2054**

In the Matter of the Civil Commitment of: Brad Ronald Stevens

**Filed June 20, 2016
Affirmed
Connolly, Judge**

Goodhue County District Court
File No. 25-P9-04-001747

Brad Ronald Stevens, Moose Lake, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant, committed as a sexually dangerous person, challenges the denial of his motions for relief, arguing that the district court abused its discretion in denying his Minn. R. Civ. P. 60.02 motion and in denying his motion for a preliminary injunction and a temporary restraining order. Because we see no abuse of discretion, we affirm.

# FACTS

In 1993, appellant Brad Stevens, now 49, was sentenced for two first-degree criminal-sexual-conduct offenses against two victims. In 2003, he pleaded guilty to attempted fourth-degree criminal sexual conduct against a third victim. In 2004, respondent Goodhue County filed a petition to commit him as a sexually dangerous person (SDP) and a sexual psychopathic personality (SPP). He was admitted to the Minnesota Sex Offender Program (MSOP) in St. Peter. In 2005, following a trial and a hearing, he was committed indeterminately as an SDP.

Appellant has repeatedly challenged both his conviction and his commitment in this court. *See, e.g.*, *Stevens v. State*, No. CX-96-1803 (Minn. App. Apr. 8, 1997) (affirming denial of appellant's petition to vacate two sexual assault convictions on the ground that he suffered double jeopardy after imprisonment when his wages were applied in part to reimburse the state for the cost of his incarceration), *review denied* (Minn. June 11, 1997); *Stevens v. State*, No. A06-0622 (Minn. App. Jan. 23, 2007) (affirming the denial of his motion for postconviction relief), *review denied* (Minn. Apr. 17, 2007); *Stevens v. State,* No. A09-0756 (Minn. App. Feb. 9, 2010) (affirming denial of his motion to correct his sentence); *In re Commitment of Stevens*, No. A10-1554 (Minn. App. Mar. 1, 2011) (affirming denial of appellant's motion to vacate his commitment), *review dismissed* (Minn. Aug. 18, 2011); *Stevens v. State*, No. A11-1759 (Minn. App. May 29, 2012) (affirming denial of his motion for a new trial or an evidentiary hearing).

In June 2015, appellant filed a motion under Minn. R. Civ. P. 60.02 to vacate his commitment, based on *Karsjens v. Jesson*, (*Karsjens II*) 109 F. Supp. 3d 1139 ( (D. Minn.

2

2015), *motion to certify appeal denied*, Civ. No. 11-3659, 2015 WL 4478972 (D. Minn. July 22, 2015). Appellant also filed motions for a preliminary injunction and for a temporary restraining order. His motions were denied. He challenges the denials, arguing that they were an abuse of the district court's discretion.

## D E C I S I O N

### 1. Minn. R. Civ. P. 60.02 Motion

The district court's denial of a motion brought under Minn. R. Civ. P. 60 is reviewed for an abuse of discretion. *Charson v. Temple Israel*, 419 N.W.2d 488, 490 (Minn. 1988). The district court denied appellant's motion on three grounds: (A) a committed individual may not move under Minn. R. Civ. P. 60.02 for a discharge; (B) there has been no change in the circumstances that resulted in appellant's commitment; and (C) *Karsjens II* does not preclude his commitment.

#### A. Propriety of Motion Under Minn. R. Civ. P. 60.02

In the decision challenged on appeal, the district court wrote:

> 1. This Court has previously concluded in prior orders issued in this matter that Rule 60.02 does not apply to requests for discharge from commitment. The court reaffirms its previous findings of fact and conclusions of law on this issue.
> 2. The commitment statute is the exclusive remedy for someone seeking discharge from their commitment. *In re Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012).
> 3. A motion may not be pursued under Rule 60 if the relief requested would frustrate either the rehabilitation of the patient or the protection of the public. *Id.*

This conclusion was supported by the district court's finding that appellant is "highly likely to reoffend and is a danger to the public as he has serious difficult[y] controlling his harmful

3

sexual behavior," which indicated that the relief appellant requested, i.e., provisional discharge from MSOP, would frustrate his own rehabilitation and the protection of the public.

The district court did not err in concluding that a motion under Minn. R. Civ. P. 60.02 for relief from judgment is not an appropriate means of challenging SDP commitment or seeking discharge.

### B.    Change in Circumstances

The district court found that:

> 21.    [Appellant] has not demonstrated that he has been rehabilitated. The Court reaffirms its previous Findings that he is highly likely to reoffend and is a danger to the public as he has serious difficult[y] controlling his harmful sexual behavior.
> . . . .
> 23.    [Appellant] has not provided sufficient evidence to this Court that the facts that necessitated the original commitment have changed.    [Appellant] has not provided sufficient evidence to this Court that the facts . . . changed since the last Rule 60 order issued by the Court [two months earlier].

Appellant argues that there has been a change in his circumstances, based on evidence provided by Dr. [R.], who testified that the tools used by the doctors who supported appellant's commitment in 2005 were defective.  The district court heard Dr. [R.'s] testimony when appellant offered it to show a change in the circumstances that necessitated his commitment at a hearing on one of his previous motions.

"As the trier of fact, the district court will be in the best position . . . to evaluate the credibility of witnesses--a critical function in these cases that rely so heavily on the opinions of experts." *In re Civil Commitment of Ince*, 847 N.W.2d 13, 23-24 (Minn. 2014)

(addressing commitment as SDP). Moreover, courts must evaluate multiple factors, not just actuarial instruments, to determine whether a person is likely to reoffend. *Id.* at 24.

The district court discussed its reasons for rejecting Dr. R.'s testimony at length in its November 2014 decision, which it incorporated by reference into the decision that is the subject of this appeal.

> 29. [Appellant] bases his claims upon the testimony of Dr. [R.] . . . that the actuarial data relied upon by both experts who supported [appellant's] commitment as SDP was faulty and overestimated [appellant's] "being highly likely" to reoffend in the future.
>
> 30. Dr. [R.] questions the reliability and accuracy of the various actuarial tests that were administered to [appellant]. He alleges that [appellant's] recidivism rate would actually be much lower if [Dr. R.'s] analysis of the tests and scores were accepted.
>
> 31. Dr. [R.] concludes that [appellant] had no violations while he was in prison and that his only violation was his refusal to cooperate with sex offender treatment because his Fifth Amendment rights would not be protected.
>
> 32. The doctor goes on to conclude, however, that [appellant] would have at least 18 months of supervised release and that "[appellant] agrees to the conditions which include sex offender treatment."
>
> 33. It appears rather circuitous to say [appellant] is a low risk to reoffend as long as he is in sex offender treatment and in the same paragraph conclude that his violation of his release conditions was his refusal to participate in sex offender treatment.
>
> . . . .
>
> 37. Four doctors, two pre-petition screeners, and the two experts all opined that [appellant] met all statutory criteria for commitment as SDP.
>
> . . . .
>
> 39. Of significant importance is the fact that both of the Court-appointed examiners found factors in addition to the base rate actuarial scores that supported the conclusion that [appellant] was "highly likely" to reoffend.
>
> . . . .

5

48.     . . . [T]he Court finds that [appellant's] challenge to the initial commitment based upon the report of Dr. [R.] . . . is without merit.  The opinions and testimony of the original experts are more persuasive to the Court than the position taken by Dr. [R.].

The district court did not err in concluding that appellant has not shown significant changes in the circumstances or conditions that resulted in his initial commitment.

## C.    The Effect of *Karsjens*

Appellant's overriding argument is that the district court's 2005 orders committing him are void for lack of subject-matter jurisdiction because portions of the Minnesota civil commitment statute were declared unconstitutional by the federal district court of Minnesota in *Karsjens II*.  Both in challenging his initial commitment and in seeking release, appellant relies heavily on *Karsjens II* and on *Karsjens v. Jesson* (*Karsjens I*), 6 F. Supp. 3d 916 (D. Minn. 2014) (concluding that the appellants in that case, persons civilly committed to MSOP and challenging their commitments, had stated five claims but failed to state an equal-protection claim).  His reliance is misplaced.

As a threshold matter, the eighth circuit's review of *Karsjens II* is pending.[1]  Moreover, the *Karsjens* cases involved only one claim relating to initial commitment,

---

[1] "The federal court issued its first 'remedies' order on October 29, 2015.  *Karsjens v. Jesson (Karsjens [III])*, Civ. No. 11-3659, 2015 WL 6561712 (D. Minn. Oct. 29, 2015). The court indicated in its October 29 order that it anticipates issuing subsequent orders regarding MSOP's policies and procedures.  *Id.* at \*17.  The commissioner appealed to the Eighth Circuit and filed a motion in federal district court to stay enforcement of the October 29 order pending appeal.  The district court denied the commissioner's motion. *Karsjens v. Jesson (Karsjens [IV])*, Civ. No. 11-3659, 2015 WL 7432333, \*7 (D. Minn. Nov. 23, 2015).  The Eighth Circuit has since granted the commissioner's request for a stay pending appeal.  *Karsjens v. Jesson (Karsjens [V])*, No. 15-3485 (8th Cir. Dec. 15, 2015)." *In re Civil Commitment of Hand*, --- N.W.2d ---, ---, No. A15-1341, 2016 WL 1397100,

which was that the statute violated equal protection rights because of geographic variations in petition and commitment rates throughout the state. That claim was dismissed on the ground that the defendants had not made the decisions to commit the plaintiffs. *Karsjens I*, 6 F. Supp. at 935-36. *Karsjens I* is therefore not relevant to a challenge to initial commitment to the MSOP.

*Karsjens II* explicitly states that the case "[was not] about the immediate release of any single committed individual or committed individuals," that the MSOP facilities "[would] not be immediately closed," and that "there are some sex offenders who are truly dangerous and who should not be released." *Karsjens II*, 109 F. Supp. 3d at 1144. Thus, *Karsjens II* is also not relevant to a claim seeking immediate vacation of an SDP commitment.

In any event, the *Karsjens* matter is not dispositive authority for this court, which is bound by Minnesota Supreme Court opinions that have repeatedly rejected challenges to the constitutionality of the civil commitment of sex offenders. *See, e.g., In re Linehan*, 594 N.W.2d 867, 875-76 (Minn. 1999); *In re Blodgett*, 510 N.W.2d 910 (Minn. 1994). On issues of interpretation of the federal constitution, this court is bound not by the federal district court but by the Unites States Supreme Court and the Minnesota Supreme Court. *State v. Brist*, 812 N.W.2d 51, 54 (Minn. 2012).

---

*1 n.1 (Minn. App. Apr. 11, 2016) (holding that a motion for relief from an order for indeterminate commitment on the ground that the Minnesota Commitment and Treatment Act (MCTA) is unconstitutional is barred by the exclusive transfer-or-discharge remedies of the MCTA), *pet. for review filed* (Minn. May 10, 2016).

The district court's denial of appellant's Rule 60.02 motion was not an abuse of discretion.

## 2.    Injunctive Relief

The standard of review for denial of injunctive relief is abuse of discretion.  *See, e.g.*, *Pacific Equip. & Irr., Inc. v. Toro Co*., 519 N.W.2d 911, 918 (Minn. App. 1994) ("Our standard of review is narrow, and we find no abuse of the district court's discretion in denying [appellant's] request for injunctive relief."), *review denied* (Minn. Sept. 16, 1004).

Appellant moved for a preliminary injunction and a temporary restraining order that would "modify" his commitment and release him from judgment if he swore to abide by certain conditions, including appearing at all hearings and following state laws.  "A primary factor in determining whether to grant a temporary injunction is the proponent's probability of success in the underlying action."  *Minneapolis Fed. of Teachers v. Minneapolis Pub. Schools*, 512 N.W.2d 107, 110 (Minn. App. 1994).  Failure to establish the likelihood of success on the merits is dispositive of a motion for injunctive relief.  *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 165 (Minn. App. 1993).  Having "conclude[d] that [appellant] will not prevail on his rule 60.02 motion to vacate the commitment," as discussed above, the district court did not abuse its discretion in denying appellant's motions for injunctive relief.

**Affirmed.**